Good morning. May it please the Court, I'm Will Brody on behalf of appellants who I'll refer to as Paramount. I'd like to reserve five minutes for rebuttal. The overriding issue in this appeal is a question of pleading standards and whether Paramount has properly alleged in its complaint that it has suffered damages as a result of unconstitutional applications of the City's Hollywood SUD Ordinance and whether Paramount should at least be allowed to continue its case in the District Court. Most signage cases in this circuit are decided on summary judgment, some on preliminary injunction motions, but typically, for the most part, on fact-based inquiries, not on motions to dismiss. This is not a summary judgment case, and Paramount is entitled for the presumption that its allegations are true. The District Court, however, dismissed the complaint and made several factual findings that we think were premature. Now the CRA and the City want this Court to do the same thing and make factual findings on some very basic issues, including the factual cause of Paramount's damages, whether the favoritism that occurred within the Hollywood SUD was reasonable, whether the CRA's denials of Paramount's permits were lingering effects of prior permitting attempts, and among other things. Could you just – you know, there's Paramount 1. Yes. Right, the prior case. And before you get into the nitty-gritty of what the District Court did here, could you just make it clear to me what was the end result of Paramount 1? The end result of Paramount 1 was dismissal by this Court on mootness grounds. Paramount 1 – after Paramount 1 was heard, the City amended its Hollywood SUD ordinance, which mooted Paramount's injunctive relief claims. Yeah, there was also – there was a discussion, though, that it may not be moot because you were seeking damages. That is correct. We were seeking damages in that action. So the Court – our memorandum disposition said that you waived all damages. The disposition said we disavowed damages in the first case. We actually weren't seeking them in Paramount 1 because at the time in early 2008, when that case was – summary judgment was being heard for that case and it was about to go to trial, Paramount had not yet suffered damages. It was maintaining its signs under temporary special display permits and because the City wasn't enforcing its regulations. So when asked in an interrogatory – and this is all that happened in terms of a waiver – when asked in an interrogatory, former counsel for Paramount said, we haven't suffered damages at this point and, therefore, we don't have any to claim in this case. And it was very clear that it was limited to that action on the grounds that damages had not been suffered. This case is entirely different. Okay. So then that case gets dismissed and it's all over, right, and you file Paramount 2, this case. Well, this case was filed in the interim. This case was filed in August 2008. All right. Okay. And then – So what are the – you're not seeking injunctive and declaratory relief in this case, correct? No, we're not. Okay. So it's all about damages. Right. Well, with regard to the Hollywood SUD, we're not seeking injunctive and declaratory relief. There is a current ordinance that is one of our challenges, the amended Hollywood SUD. We would be seeking it with regard to that. But with regard to the prior ordinance, that's correct. It's just the new damages arising from the 2010 and 2011 actions and the later applications of the law as opposed to the facial challenges. Okay. So what are the damages you're seeking for what now? The damages we're seeking is based on the illegal denial of a super graphic permit. Paramount is no longer able to lease its space and obtain revenue. I'm sorry. Oh, no, go ahead. I'm just trying to get straight. So the damages that you're claiming now have nothing to do with the prior ordinance that's no longer in effect? It has to do with later applications of that prior ordinance. So when was your ---- Really what it has to do with is the denial of our permit, illegal denial of our permit. But that happened back in, I mean, years ago, right? Well, no. They're different, actually. The Paramount One, and this was admitted by Mr. Bostrom, counsel, for the city at the Paramount One oral argument was a facial claim. These are later applications. Paramount One was filed in January of 2007. In the complaint, a lot of the actions we allege occurred in 2010. There were, you know, different activities, different permitting applications. Four years later, we're seeking digital permits, permits on different terms in 2008 through 2010. We're also challenging new favoritism, a large pattern of favoritism, which we claim is pretty egregious if you read the complaint, that occurred after Paramount One had been heard. So at least on the record and on the complaint and what we're pleading and what has been pled, they're much different. But I'm just looking at our memorandum disposition in Paramount One. Yes. And so maybe you can just help me with this. Because what we said there is that you tried, I don't know if it was you, but your client tried to say there that you had only disavowed damages incurred between the district court's order on June 6, 2008, and the city's amendment of the Hollywood SUD on September 28, 2010. Right? So that's the sort of past damages. Our court said no, that in fact your disavowal of damages went well beyond that. Right? Encompassing future damages, presumably the very damages you're trying to seek in this action, no? No. The damages, that's correct to an extent, but the damages that were disavowed were the damages being claimed in that action with respect to the claims in that action. These are different claims. They look pretty similar. Well, they're not. Paramount did not say that we're disavowing any damages. Anytime the city does anything to us that's unconstitutional, we're never going to seek damages. That's never what occurred in Paramount One. All that happened was Paramount says we are not seeking damages because we haven't suffered them yet. And then we did argue that we would be entitled to obtain future damages in Paramount One. That was argued. But just with respect to the claims in that action, which was a facial claim. If I can read something. Hold on. What do you mean with respect to the claims in that action? The damages presumably are the lost revenue from not being able to put up the ads, right? They're no different from the damages you were seeking in that action versus this one. The money would be the same, although it would be from different time periods with different consideration. But that's what I'm saying. You're trying to limit it to time periods. And our court said we rejected your attempt to limit it to a defined time period between 08 and 2010 in Paramount One. We said no, you would disavow all damages, past and future. The distinction I'm trying to make is between which actions it was disavowed in, whether it was for those claims or this claim. And if I could read something from the record, an oral argument in Paramount One, I think it might help. This is a statement from Mr. Bostrom discussing whether we'd be able to make later as-applied claims for applications of the law. And an oral argument, he said, this is on page 18 of the supplemental excerpts of record. He said, now I've heard Paramount now claims that we wanted to pursue damages for future enactments, so future dealings with the city. But what we have to remember is this is a facial challenge. I don't know how you can waive damages to a facial challenge on day one, but not waive them on day two. You've got to assume that the face is the face on day one and day two. Now, here's – if there's a different application, a different manner of adjudicating the application, that's somehow different, then maybe you can understand that. But when it's purely a facial issue, I think it's encompassed within the waiver. So what occurred and what the representation that was made on the record there was that it wouldn't have a preclusive raised judicata effect. And this is all in our briefing. The Court was concerned that Paramount wouldn't be able to come back and make claims for as-applied denials of its rights. And Mr. Boston represented on the record, and this was everybody's assumption, was that that wasn't the case, that we would be able to later argue that, hey, yes, we didn't seek damages in Paramount 1 because we hadn't suffered them yet. But if we make different as-applied claims for different permits and different actions, including new patterns of favoritism that were not at issue at all in the first case, we would be able to make that later as-applied challenge. Okay. Maybe you should – I don't want to burn up all your time on this issue, but so tell us what was – Judge Collins' order is pretty thorough, comprehensive, addressed all the issues. Where did she go wrong? Well, I don't think it addressed all the issues on the unfettered discretion of the Hollywood SUD. The original one or the amended one? The application of the original Hollywood SUD and the in-lieu fee provisions that allowed administrators at the CRA and the city to give permits for in-lieu fees, which weren't set and based on a very – almost no guidance whatsoever from the city. And we cite plenty of cases, such as the Desert Outdoor case, this Court's Regency Outdoor decision in 2010, an unpublished decision, all finding that even stricter ordinances with more guidance are still invalid based on the unfettered discretion doctrine. All she said on our unfettered discretion claims was that Paramount didn't – were approximately caused by the permit denials. And I think – first of all, I think we cite cases. I believe White v. Roper is one of the cases. But that is a clear factual issue that shouldn't have been decided on a motion to dismiss. The other thing I think is – Again, just going back to Paramount 1. Yeah. How come the statement we made there doesn't sort of take care of this? We said, in any event, Paramount is not able to demonstrate that any alleged damages it incurred after the district court's order resulted from application of the provisions that the Hollywood SUD challenged in the complaint. Didn't we already rule on this? Well, when we read that statement in the memorandum, it was a bit cryptic because that issue was never litigated. And I would refer the Court to our briefs because there's a lot of response to that that I don't have time to get into detail here. But that issue, the merits of Paramount's damages claim, was simply not litigated at all. Remember, Paramount waived damages in the district court, so the opportunity to explain the causation and substantive merits didn't occur. And as I said earlier, we're seeking different damages from different denials of our permits in this case. The city would have the burden of showing where that issue was litigated for it to have preclusive effect, and in their briefs they didn't do that because they can't do that. So the other thing is I do think as a matter of causation, our damages story is pretty clear. I don't really understand how the Court could say that as a matter of law, if you're denied a permit, that doesn't cause damages from the inability to use that permit. And I think it's actually a very clear causal link between the illegal action we're claiming, which is the denial of the permit, and the damages we're claiming, which is the inability to use that permit. Give me a precise date. When did damages actually start accruing for your client? Approximately in early 2010 when they stopped maintaining the signage. That's when they actually had to take them down. That's when they took them down. Do you want to save the minute and a half for rebuttal? Yes, I would. Good morning. Deputy City Attorney Michael Bostrom on behalf of the city. I'm going to split my time. Your voice up. I'm sorry. Yes, Deputy City Attorney on behalf of the city of Los Angeles, I'm going to split my time with Ms. Rosequest, who's representing the CRA separately. I think the last question was key to this argument. When did Paramount's damages allegedly accrue? Paramount just stated unequivocally that they commenced in early 2010. The record is well established that in early 2010, the Hollywood SUD was no longer in force or effect. So I think the district court's decision that a reasonable observer could not conclude that there's a causation link when years earlier under a different regime, the city allegedly denied permits, yet your damages didn't commence until after the laws had been changed and those new laws prevented you from maintaining signage, I think the district court is clearly correct that there is no causation. But I don't think we need to even address that because we do have a judgment from this circuit. And I feel a little bit like I'm experiencing deja vu. I was here arguing, these gentlemen were here arguing that the case was not moot because they had these precise damages that we're talking about today. Paramount just argued that the city didn't actually litigate this issue and that the city's briefing doesn't discuss it. In fact, we moved to dismiss the appeal as moot, and Paramount argued that it's not moot precisely because they have the damages that they're talking about today. We cited that in our brief. We argued that they waived it. They submitted declarations attesting again that their damages did not commence until 2010. The court considered our arguments, their arguments, their declarations, and the court issued an order finding in the city's favor that the case was moot, that they did waive damages, not only past damages, but future damages as well. And at any rate, Paramount is not able to demonstrate that any alleged damages incurred after the district's order resulted from application of the provisions of the Hollywood SUD challenged in the complaint. Can you just help me in the timeline here? So in early 2010 when their damages began to accrue, what was the sign ordinance regime in place at that point? Sure. We call it the 2009 ban. And let me kind of explain what happened. We had a citywide ban as early as 2002, which basically said no super graphics, no off-site signs, unless you're in a special legislatively created signed district. The district court found that that was unconstitutional and enjoined us from enforcing that. As a result, super graphics appeared everywhere. That's in the worldwide rush decision at this court. Every thoroughfare, they existed. The city immediately tried to rein that in. We adopted interim control measures while we were studying a permanent ordinance, and those interim measures commenced December 26, 2008. The city's permanent replacement came about in August of 2009. And so that was a municipal code amendment completely banning any off-site or super graphic signs as we continued to litigate up to the Ninth Circuit, the district court's decision. And so when they're talking about 2010, they're talking about a permanent amendment of the city's municipal code banning completely off-site and super graphic signs citywide. Everywhere. Everywhere. Even in the Hollywood special user district. Correct, because the district court had ruled that we could not maintain a citywide ban and allow them in signed districts simultaneously. And the city said, okay, while we're appealing that decision, let's cut it off everywhere because we were experiencing extreme problems with rogue operators just throwing up signs in the middle of the night. These people were one of those operators. The fire department had to go out and save their installers who were installing signs on scaffolds in the middle of the night. So there were severe issues that the city was dealing with. So we have litigated these issues. The Ninth Circuit has already dealt with this case, and I think it's barred by race judicata. The only claim that they argue with the new Hollywood SUD is they say, look, the city previously determined that its interest could be served by allowing some super graphics. We did make that determination previously. We found that Hollywood was a blighted area and that allowing special sign rights would serve as an important tool to incentivize developers to come in and invest their money and redevelop this area. Well, in 2010, the city made a determination that that program was no longer necessary. Hollywood has undergone a revitalization, and so the law, as it stands now, says that those special super graphics sign rights are no longer necessary to incentivize developers, so we prohibited the super graphics in the Hollywood district as well. New super graphics, the existing ones, of course, get to stay. So the law is very clear that a complete ban is lawful. It satisfies Central Hudson. It's not under-inclusive. It's a complete ban. It doesn't overreach. Metro Media decided a complete ban is perfectly acceptable, so I think that their Central Hudson challenge is not well taken to that. In your view, is there anything different about this case than Paramount One, the underlying allegations? Your Honor, no. I don't think there is because if you also look at the factual history, the day after the district court entered summary judgment in the city's favor in Paramount One, they came in and they applied for permits again because the same district court had invalidated the citywide ban, and so they were attempting to avail themselves of the district's court decision on the citywide ban, even though just one day earlier they had lost their own challenge in front of the same district court on the Hollywood SUD. So we're not talking about different facts. We're not talking about different claims. We're not talking about anything different. We're just talking about a lawyer's effort to bring his client in line with a different decision that the district court made at the same time, and, of course, that decision was overturned by this court as well. So it is the same thing. We've already litigated these issues up and down the courts, and unless there are any other questions with that, I'll submit. Thank you. Thank you very much. Here. Ms. Rosequist. Yes, good morning, Your Honors. I represent the CRALA, a designated local authority, who's the successor agency to the Community Redevelopment Agency of the City of Los Angeles. I thought all the community redevelopment agencies were wiped out. Yes, they are. So this is the successor agency. And I would say, in this case, the claims against the CRA that Paramount brings are time-barred. And this is addressed in our brief. There was a two-year statute of limitations. All their claims against the CRA hinged on their allegations of being rebuffed in their permitting attempts in January 2007. Thus, to be within the statute of limitations, they needed to bring their claims against the CRA by January 2009, which they did not do. They didn't allege any claims against the CRA until October 2010. And this is certainly not an instance where Paramount was caught unaware by the statute of limitations. In both Paramount 1 in 2007 and then again in the original complaint in Paramount 2 that was filed in 2008, they made allegations about the CRA. The city even pointed out to Paramount, if you have allegations against the CRA, you need to bring the CRA into the case. And they didn't do it. They just didn't bring a case against the CRA. And so now their claims are time-barred. There's no reason to not apply the statute of limitations here. To get around this, Paramount tries to veil themselves of the doctrine of continuing violations. That doctrine doesn't apply in this case. That doctrine is an exception rather than the rule. Paramount doesn't even cite a case where the doctrine of continuing violations actually was ever applied. And in my research, the only places I've found that it applies are in employment cases. And even in employment cases, it seems to only imply when an employee is continually under some kind of discriminatory policy about promotions. It doesn't apply in employment cases when an employee claims that they were discriminatorily fired or that there was discrimination in hiring. In that instance, you have a discrete act. Once a discrete act happens, you may have lingering harm or continuing harm, but you don't have a continuing violation. And the same thing is here. They allege that they suffered harm when they were rebuffed in January 2007. That's a discrete act. But what about the subsequent efforts to reengage with CRA? Sorry. Oh, so right. Well, so in those instances, they – so those allegations are not in the amended complaint. So – and the district court found that any leave to amend to include additional allegations would be futile. You know, I would argue they haven't really put that issue on appeal. They didn't list it in their issues that they were appealing, the denial of leave to amend. But if that issue is properly before the court, the district court was correct in finding that it would be futile. And that's because there aren't actually any allegations of subsequent permit denials. What you have is one declaration by their consultant, Mr. Magdaleno, in which he says that he called the CRA twice in 2008 to make inquiries about a super graphic permit. That was in June 2008. Okay, those – even if those allegations were added to the complaint, they're time barred. They're still time barred. They weren't within the statutory period. Then – and also – then he also says that he called in 2010 for two weeks in September 2010. Okay, and that was on the eve of when the city was going to implement their new Hollywood – amended Hollywood SUD, which completely banned super graphics, and the CRA no longer had this – there was no longer the exception for the CRA to enter into some kind of agreement. And so, you know, phone calls in October 2010 or phone calls in 2008, phone calls are simply the lingering effects of having been rebuffed in 2007. There was nothing that changed in the CRA's regulations. There was nothing further to discuss. And furthermore, even whether you – whether you characterize them as lingering effects or whether you characterize them as some kind of new discrete act, it's not some kind of constitutional violation to not return phone calls. So, you know, even if there – even if it was a discrete act, it's not some kind of illegal discrete act. So to have a 1983 action, which is what their action is for constitutional violations, you have to have some kind of action by the CRA. And the CRA acted through its board, you know, and returned phone calls. So just – I want to make sure I understand your argument. So if, in fact, you had returned the calls and actually had some discussions, then it might be a different case. Is that what you're saying? No, I mean, it would depend on – the facts that we have here are that they placed phone calls and the phone calls weren't returned. You know, if you had some kind of different factual scenario where they were resubmitting some kind of different permit application, I mean, you just don't have that. They just placed phone calls and, you know – Could they have submitted a new application at that time? What's that? Could they have – when those phone – during that period of time of the phone calls, was there a basis for them to submit a new – I – for a new super graphic permit? Yes, at that time. I suppose they could have if that's the route that they wanted to go down. They could have started, I guess, some type of new – I mean, really what they had already engaged in a discussion about the super graphic permits, and they were rebuffed. So I don't know under what factual scenario maybe they could have submitted a new one. Here it was, like I said, kind of the lingering effects. They'd already been rebuffed, so I don't know that they could have submitted a new one. Anything else? No, that's all. Thank you. Okay. Thank you. There are a lot of points. I want to make one quick one about the CRA's argument. At the end there, we were just litigating the facts, which is our kind of frustration with what we have to do here. The circumstances of the phone calls are not in the complaint. That's not what – that's not the whole story by any stretch of the means. And we did go through very extensive efforts in 2008 and 2010 to contact the CRA and the city to get permits. It's interesting, the CRA says that we wouldn't have got permits because it was so close to the changing of the law, but if you look at our complaint in page 421 through 432 of the record, many other parties, Paramount's neighbors, were getting permits for super graphics just like the ones we wanted in 2010 and into 2011 even. And that's the new pattern of favoritism that arose after Paramount Law never found. Well, I mean, you had to know that the statute of limitations was going to be a major obstacle to bringing CRA in this late. Why – it seems to me you did have an obligation to affirmatively allege in the complaint facts that would ward off the statute of limitations, and you didn't. Well, these are new attempts after the city started giving super graphics to other parties on different levels. So, you know, if you read the cases we cited, the Thomas v. Chicago case, the GK Limited case, there's a number of cases that say when this pattern of favoritism arises, it is proper for – to bring an as-applied challenge. And when that pattern arose, and we think it's pretty egregious, and no court has ever looked at this under the in-lieu fee provisions, when that pattern arose, that's when we sued. And that's what we want to discuss in the district court and at least have a chance to put forward evidence about this pattern of favoritism, which we think was a real problem and probably the reason why they repealed the ordinance. Now, my clients' neighbors are all putting up these signs and getting ushered to the front of the line, whereas there are extensive efforts, not on the record yet, but extensive efforts to get permits and literally just shut out. Another issue – I want to address one issue before I run out of time on the city's argument, and that's about the changing of the laws. The issue here is super graphics are still legal if you have a permit, and you've always needed a permit to erect super graphics. So nothing really changed in 2009 and 2010. They just said the circumstances under which you can get permits are different. There are still exceptions within the Hollywood SUD and everywhere. But our complaint and what we're being sued for in the state court, or we're being sued for in the state court, was simply to enforce laws that have been on the books forever, including nuisance laws and the 2002 ban of super graphics for erecting signs without a permit. It's not some new law that's being enforced. So it was always foreseeable that without a permit, Paramount wouldn't be able to erect signs and earn revenue. So what happened to that enforcement proceeding in the state court? It was – Gone? It was dismissed on a motion in our favor on a motion for judgment on the pleadings, yes. What was the basis for the motion? The basis was that we were encompassed within a settlement with a sign company who settled with the city and released us as well. So there have been no negative ramifications from that enforcement proceeding then? Well, it's on appeal and, of course, extensive litigation costs and efforts, but yes. Is there anything else? No, thank you. Thank you very much. Very interesting and complicated history and whatnot. We'll see if we can sort it out. In the meantime, the matter is submitted. Thank you very much, counsel. We appreciate all the arguments.
judges: Conlon, Paez, Watford